## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | NO.  01-457-02 |
| v. | : | |
| | : | CIVIL ACTION |
| KEITH WATERS | : | NO.  08-4531 |

DuBOIS, J.                                                                          JUNE 15, 2009

### M E M O R A N D U M

### I.        INTRODUCTION

This case arises out of two interrelated convictions of petitioner, Keith Waters, for crimes related to the distribution of cocaine base.  In 2000, petitioner was indicted for conspiracy to distribute cocaine base and aiding and abetting the distribution of cocaine base.  Petitioner pleaded guilty to three counts of aiding and abetting such distribution within 1,000 feet of a school zone and was sentenced, *inter alia*, to 151 months incarceration.  In 2001, defendant was indicted a second time for conspiracy to distribute cocaine base; in 2003, he was found guilty of this charge after trial by jury.  The first sentence imposed in the 2001 case, life imprisonment, was reversed based on the then-recent Supreme Court decision in United States v. Booker, 543 U.S. 220 (2005); on remand, petitioner was sentenced to, *inter alia*, a term of thirty years in the 2001 case.

In 2005, petitioner succeeded in challenging his guilty plea in the 2000 case on the ground of ineffective assistance of counsel.  According to petitioner's testimony, counsel explained to him that a guilty plea would *permanently* dispose of all conspiracy charges and would protect him from reindictment for conspiracy.  Defense counsel was not called as a witness to confirm or deny that statement.  The court concluded that such alleged advice was contrary to the provisions of the plea agreement, which said nothing about a permanent

disposition of all conspiracy charges.  In the absence of contrary evidence, the court ruled that

this advice of counsel was ineffective and, accordingly, the judgment and sentence were vacated.

Petitioner remains incarcerated on the conspiracy conviction in the 2001 case.

Currently before the Court is petitioner's Motion to Vacate, Set Aside, or Correct

Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255.  Petitioner argues that his

2001 conviction should be vacated on the ground that, *inter alia*, the 2001 indictment was

motivated by prosecutorial vindictiveness.  For the reasons that follow, petitioner's motion is

denied.

## II.      BACKGROUND

On September 6, 2000, petitioner was indicted ("2000 Indictment") and charged with one

count of conspiracy to distribute cocaine base, three counts of aiding and abetting the distribution

of cocaine base, and three counts of aiding and abetting the distribution of cocaine base within

1,000 feet of a school.  United States v. Waters, No. 00-CR-522-02 (E.D. Pa. Sept. 6, 2000).  The

2000 Indictment charged that petitioner and Clifton Junius conspired together to distribute

cocaine base from on or about June 21, 2000 to on or about July 20, 2000.  (2000 Indictment 1.)

Following his arrest on July 20, 2000, petitioner cooperated with the government,

proffering on multiple occasions and otherwise assisting the government in its investigation.

(DEA Reports of Investigation, Ex. 1 to Pet'r Reply.)  During the proffer sessions, the

government informed petitioner that it believed that he was involved in a conspiracy larger than

that alleged in the 2000 Indictment—the Coach conspiracy—and petitioner discussed with the

government events that occurred before the June 21, 2000 start date of the conspiracy alleged in

the 2000 Indictment.  (§ 2255 Hr'g Tr. 6, Oct. 7, 2005, No. 00-CR-522-02, Ex. B to Gov't

Surreply; DEA Reports of Investigation.)  Thereafter, petitioner ceased cooperating because he feared for his life.  (§ 2255 Hr'g Tr. 30–32, June 1, 2009, No. 01-457-02.)

On December 18, 2000, petitioner, represented by Brian McMonagle, Esquire, entered into a guilty plea agreement ("Plea Agreement") with the government.  In the Plea Agreement, petitioner and the government agreed, *inter alia*, that petitioner would plead guilty to Counts 3, 5, and 7 of the 2000 Indictment, aiding and abetting the distribution of cocaine base within 1,000 feet of a school in violation of 21 U.S.C. § 860 and 18 U.S.C. § 2.  (Plea Agreement ¶ 1, Ex. A to Gov't Surreply.)  The government agreed to move at sentencing to dismiss the other counts of the 2000 Indictment as to petitioner, including the conspiracy charge.  (Id. ¶ 4.)  The Honorable Robert F. Kelly presided over a change of plea hearing on December 18, 2000.  At the hearing, following a colloquy held pursuant to Federal Rule of Criminal Procedure 11, Judge Kelly accepted petitioner's plea of guilty to Counts 3, 5, and 7 of the 2000 Indictment, and the government stated its intention to move for the dismissal of the remaining counts at sentencing.

On October 1, 2001, petitioner was sentenced by Judge Kelly to 151 months incarceration and ten years of supervised release on Counts 3, 5, and 7 of the 2000 Indictment; the conspiracy count and the other counts to which petitioner did not plead were dismissed.  Thereafter, petitioner appealed to the United States Court of Appeals for the Third Circuit, raising only the issue of "whether the government must show that the drugs seized from a defendant contained sodium bicarbonate in order to demonstrate by a preponderance of the evidence that they are crack for sentencing purposes."  United States v. Waters, 313 F.3d 151, 152 (3d Cir. 2002).  The Third Circuit held that "the District Court did not err when it found that the government had shown that the substance was crack, even though it did not contain sodium bicarbonate . . ." and

affirmed the judgment.  Id.

On August 8, 2001, before petitioner was sentenced in the 2000 case, he was charged in a sealed indictment ("2001 Indictment") with one count of conspiracy to distribute cocaine base. United States v. Waters, No. 01-CR-457-02 (E.D. Pa. Aug. 8, 2001).  The alleged conspiracy occurred from on or about January 1, 1992 to on or about May 28, 2001.  (2001 Indictment 3–4.) The 2001 Indictment was unsealed on September 6, 2001.  In the Superseding 2001 Indictment filed on August 7, 2002, the overt acts listed included the three sales from the 2000 Indictment to which petitioner had pled guilty.  (Superseding 2001Indictment ¶¶ 45–47.)

The trial on the Superseding 2001 Indictment began on January 27, 2003 before then Chief Judge James T. Giles.  Petitioner was represented by Guillermo L. Bosch, Esquire.  On March 27, 2003, petitioner was found guilty of conspiracy to distribute cocaine base.  On August 22, 2003, Judge Giles sentenced petitioner to life imprisonment and twenty years of supervised release.  Petitioner appealed that sentence.  On July 7, 2005, in a non-precedential opinion, the Third Circuit affirmed petitioner's conviction but remanded the case for resentencing in light of United States v. Booker, 543 U.S. 220 (2005).  United States v. Waters, 138 F. App'x 460, 463 (3d Cir. 2005).  On October 28, 2005, Judge Giles sentenced petitioner to thirty years incarceration (to run concurrently with the sentenced imposed by Judge Kelly in the 2000 case) and twenty years of supervised release.

Petitioner appealed his conviction in the 2001 case to the Third Circuit on the ground of prosecutorial misconduct with respect to the Plea Agreement in the 2000 case.  On appeal, petitioner argued that the government, by indicting him in the 2001 case, reneged on its promise that his guilty plea in the 2000 case would resolve all known criminal prosecutions pending

4

against him.  The Third Circuit affirmed the conviction, holding that petitioner's argument was without merit as "the government never agreed in the plea agreement in the prior prosecution to refrain from bringing additional charges against [petitioner] related to his involvement in [the Coach] drug organization."  United States v. Waters, Nos. 05-5744, 05-4914, 06-1821, 2007 WL 2783349, at *2 (3d Cir. Sept. 26, 2007) (non-precedential).

On March 11, 2004, petitioner filed a *pro se* Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C.§ 2255 in the 2000 case ("First § 2255 Motion").  Judge Kelly appointed Patrick J. Egan, Esquire, to represent petitioner and held an evidentiary hearing on October 7, 2005.  The critical question presented by the First § 2255 Motion was whether McGonagle provided ineffective assistance of counsel with respect to petitioner's Plea Agreement.  Petitioner argued and testified at the hearing that "McGonagle advised that a guilty plea would completely dispose of the conspiracy charge against him involving the alleged drug transactions in June/July 2000."  Mem. & Order of Dec. 13, 2005, at 9, No. 00-CR-522-02.  McMonagle was not called to testify at that hearing, and there was no contrary evidence regarding his claimed advice to petitioner.  Petitioner contended that, in reliance on this advice, he entered into the Plea Agreement based upon the understanding that he would not be reindicted on any conspiracy charge involving the alleged drug transactions from the June/July 2000 period.  Id. at 9–10.

Analyzing petitioner's claim under Strickland v. Washington, 466 U.S. 668 (1984), Judge Kelly concluded that as the Plea Agreement did not provide for a permanent disposition of all conspiracy charges and as McMonagle's claimed advice was to the contrary, McMonagle's assistance fell "below the range of competence demanded of attorneys in criminal cases."  Id. at

13.  Judge Kelly likewise concluded that such advice had a prejudicial impact on petitioner, who demonstrated that there was a reasonable probability that but for McMonagle's errors, he would not have pled guilty.  Id. at 15.  Accordingly, Judge Kelly ruled that petitioner's guilty plea was not voluntary and intelligent, and he vacated the judgment and sentence.  Id. at 16.  A review of the docket discloses that, on June 27, 2007, the retrial on the 2000 Indictment was continued to December 3, 2007.  There are no docket entries after June 27, 2007.

Petitioner remains incarcerated on the conspiracy conviction in the 2001 case, serving the thirty-year sentence imposed by Judge Giles.  On September 17, 2008, petitioner filed the instant Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255 ("Second § 2255 Motion").  Petitioner challenges his conviction in the 2001 case on the following grounds:

> Argument A:  Petitioner's Counsel Was Ineffective in Failing to Enforce His Rights Under the Plea Agreement
>
> Argument B:  Petitioner's Ineffective Counsel Failed to Enforce the Earlier Plea Bargain That Disposed of the Conspiracy Charge in This Conviction and Thus Implicates Double Jeopardy
>
> Argument C:  Petitioner's Ineffective Counsel Failed to Recognize the United States Attorney's Action Breached the Original Plea Agreement and His Failure to Request the Court to Order Specific Performance of the Original Plea Agreement Prejudiced Petitioner's Case
>
> Argument D:  Petitioner's Ineffective Counsel Failed to Argue that the Action of the United States Attorney Constituted Prosecutorial Misconduct and Violated the Due Process Rights of [Petitioner]
>
> Argument E:  Petitioner's Ineffective Counsel Failed to Argue that the Action of the United States in Sealing the Second Indictment Until After Sentencing on the First Plea Agreement Violated Brady

The Court concluded that an evidentiary hearing was necessary with respect to one of petitioner's arguments—Argument D (the 2001 Indictment was the result of prosecutorial

misconduct).  Accordingly, pursuant to Rule 8(c) of the Rules Governing § 2255 Proceedings, the Court appointed Patrick J. Egan, Esquire to represent petitioner with respect to his Second § 2255 Motion.

The Court held an evidentiary hearing on Argument D on May 27, 2009 and June 1, 2009.  The government presented witnesses Special Agent Frank Costobile; Assistant United States Attorney Patrick Askin; and Michael Giampietro, petitioner's first attorney in the 2000 case before Judge Kelly.  Petitioner also testified on his own behalf.  Following the conclusion of the presentation of evidence, the Court heard oral argument on Argument D and the remaining issues raised by petitioner's Second § 2255 Motion.

## III.    DISCUSSION

This Memorandum will first discuss Argument D, petitioner's claim of prosecutorial vindictiveness, which was the focus of the Court's evidentiary hearing.  It will then turn to petitioner's remaining arguments.

### A.    Prosecutorial Vindictiveness

In Argument D, petitioner contends that his counsel was ineffective for failing to argue that the 2001 Indictment was motivated by prosecutorial vindictiveness and therefore violated petitioner's due process rights.  (Mem. in Support of Habeas Pet. 5–7.)  Egan elaborates on petitioner's argument, contending that petitioner was indicted for a second time because he ceased cooperating with the government.  (Pet'r Reply 1–3.)

The Supreme Court has established two distinct approaches to the question of prosecutorial vindictiveness:  a presumption of vindictiveness and actual vindictiveness. Whether to apply a presumption of vindictiveness or to require proof of actual vindictiveness

depends on the factual situation and the stage of the proceedings.  In <u>North Carolina v. Pearce</u>, 395 U.S. 711, 713 (1969), <u>overruled on other grounds by</u> <u>Alabama v. Smith</u>, 490 U.S. 794 (1989), the Court examined the situation in which a defendant's criminal conviction has been set aside and a harsher sentence has been imposed following a retrial.  The Court held that "the imposition of a penalty upon the defendant for having successfully pursued a statutory right of appeal or collateral remedy would be . . . a violation of due process of law."  <u>Id.</u> at 724 (citation omitted).  The Court was concerned not only with actual vindictiveness on the part of the sentencing judge but also that "a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge."  <u>Id.</u> at 725 (citation omitted).  To address the latter concern, the Court applied a presumption of vindictiveness:  "[W]henever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear.  Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding."  <u>Id.</u> at 726.[1]  The Court applied a similar presumption in a case in which, after a defendant was convicted of a misdemeanor and exercised his right to appeal *de novo*, the prosecutor indicted him for a felony charge covering the same conduct.  <u>Blackledge v. Perry</u>, 417 U.S. 21, 23, 27–28 (1974).  Explaining the appropriateness of a presumption, the Court held that "the Due Process Clause is not offended by all possibilities of increased punishment upon retrial

---

[1] In <u>Alabama v. Smith</u>, 490 U.S. 794, 802 (1989), the Court overruled the companion case to <u>North Carolina v. Pearce</u>, <u>Simpson v. Rice</u>, holding that "there is no basis for a presumption of vindictiveness where a second sentence imposed after a trial is heavier than a first sentence imposed after a guilty plea . . . ."

after appeal, but only by those that pose a realistic likelihood of 'vindictiveness.'"[2]  Id. at 27.

In a second series of cases, the Supreme Court held that as the factual and procedural situations presented no "realistic likelihood of vindictiveness," the defendant could prevail only by demonstrating the existence of actual vindictiveness.  In Bordenkircher v. Hayes, 434 U.S. 357, 358, 365 (1978), the Court held that the Due Process Clause is not violated when a prosecutor carries out a threat made during plea negotiations to reindict the defendant on more serious charges if he does not plead guilty to the original charges.  Emphasizing the context of the "give-and-take" of plea bargaining, the Court held that there is no "element of punishment or retaliation [for declining to plead guilty] so long as the accused is free to accept or reject the prosecution's offer."  Id. at 363.  While acknowledging that the negotiation of a plea may discourage a defendant from exercising his trial rights, "the imposition of these difficult choices [is] an inevitable—and permissible—attribute of any legitimate system which tolerates and encourages the negotiation of pleas."  Id. at 364 (internal quotation marks & citation omitted).  The Court also stressed that "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion."  Id.

In United States v. Goodwin, 457 U.S. 368, 370 (1982), the Court examined a different pretrial scenario—when, after a defendant demanded a jury trial on pending misdemeanor

_____

[2] This presumption, however, may be rebutted.  In Wasman v. United States, 468 U.S. 559, 569 (1984), the Court initially applied the presumption of Pearce when the defendant was given a greater sentence after retrial following a successful appeal than he had been given after his original conviction.  In imposing a harsher sentence, the sentencing judge relied on the fact that the defendant had been convicted of an additional offense in the time between the two sentencing proceedings.  Id. at 569.  The Court concluded that "[c]onsideration of a criminal conviction obtained in the interim between an original sentencing and a sentencing after retrial is manifestly legitimate.  This amply rebuts any presumption of vindictiveness."  Id. at 569–70.

charges, the prosecutor indicted and convicted him on a felony charge.  The court below had

applied a presumption of vindictiveness, but the Supreme Court cautioned that "[g]iven the

severity of such a presumption, however—which may operate in the absence of any proof of an

improper motive and thus may block a legitimate response to criminal conduct—the Court has

done so only in cases in which a reasonable likelihood of vindictiveness exists."  Id. at 373.  In

the pretrial setting, the Court held that there is much less need for a presumption of

vindictiveness as charging decisions are much less likely to be improperly motivated.  Id. at 381.

"A prosecutor should remain free before trial to exercise the broad discretion entrusted to him to

determine the extent of the societal interest in prosecution. . . . [T]he initial charges filed by a

prosecutor may not reflect the extent to which an individual is legitimately subject to

prosecution."  Id. at 382 (internal citations omitted).  While vindictiveness in this context is not

likely enough to support a presumption, the Court recognized that there is an opportunity for

vindictiveness and left the opportunity open for a defendant to present evidence that could give

rise to a claim of *actual* vindictiveness.  Id. at 380–81 & 380 n.12.

The Third Circuit and every other circuit court faced with the issue of vindictiveness have

applied these two approaches:  first, the court asks whether the situation warrants a presumption

of vindictiveness; if not, the court then analyzes whether the defendant has provided sufficient

proof of actual vindictiveness.  Some courts have reversed the order of these two steps.  See, e.g.,

United States v. Esposito, 968 F.2d 300, 302–04 (3d Cir. 1992) (analyzing whether a

presumption of vindictiveness was appropriate after the defendant conceded that there was no

actual vindictiveness motivating the decision to reindict him).

The Third Circuit has also addressed the factual situation at issue in the instant

case—where a defendant alleges vindictive prosecution stemming from the defendant's pretrial refusal to cooperate with the government. Such cases are governed by Bordenkircher—as a defendant makes a free, informed decision not to cooperate, there is no presumption of vindictiveness in the decision to prosecute if it is "based upon the usual determinative factors." United States v. Oliver, 787 F.2d 124, 126 (3d Cir. 1986) (citations omitted); accord United States v. DuFresne, 58 F. App'x 890, 895–96 (3d Cir. 2003) (non-precedential); United States v. Arakelyan, No. 06-CR-226-04, 2008 WL 1849126, at *2–3 (E.D. Pa. Apr. 25, 2008). As there is no presumption of vindictiveness, a defendant may only establish a violation of due process if he presents evidence of actual vindictiveness. Arakelyan, 2008 WL 1849126, at *3; see also United States v. Paramo, 998 F.2d 1212, 1220–21 (3d Cir. 1993). "Such proof . . . is exceedingly difficult to make. . . . [A] charging decision generally is not impermissible unless it results solely from the defendant's exercise of a guaranteed legal right, rather than the prosecutor's ordinary assessment of the societal interest in prosecution." Paramo, 998 F.3d at 1221 (internal quotation marks & citations omitted). Moreover, "the defendant must affirmatively establish vindictiveness, as the fact of multiple prosecutions, standing alone, does not prove an abuse of prosecutorial discretion." United States v. Pungitore, 910 F.2d 1084, 1112 (3d Cir. 1990). Neither, without more, does suspicious timing. See United States v. Falcon, 347 F.3d 1000, 1005 (7th Cir. 2003); United States v. Mills, 925 F.2d 455, 464 (D.C. Cir. 1991), modified on other grounds, 964 F.2d 1186 (D.C. Cir. 1992) (en banc).

The aforementioned authority makes clear that a presumption of vindictiveness should not be applied in the instant case. Thus, petitioner can establish a violation of his due process rights only by demonstrating actual vindictiveness. See, e.g., Esposito, 968 F.2d at 306–07

11

("Where a prosecutor's conduct is equally attributable to legitimate reasons, a defendant must show actual vindictiveness for a presumption will not apply.").  Petitioner argues that the prosecutor decided to reindict him for conspiracy only because he ceased cooperating with the government.  (Pet'r Reply 2–4.)  The evidence adduced at the hearing, however, does not support this theory and does not satisfy petitioner's "exceedingly difficult" burden to prove actual vindictiveness.  Paramo, 998 F.3d at 1221.

The first witness for the government was Frank Costobile, a Drug Enforcement Agency ("DEA") agent who participated in the investigation of petitioner and the larger Coach conspiracy.  (§ 2255 Hr'g Tr. 7–8, May 27, 2009.)  Agent Costobile testified that after petitioner's arrest on July 20, 2000, petitioner participated in at least three proffer sessions.  (Id. at 8–9.)  At those sessions, Agent Costobile told petitioner that "the investigation was larger than the current investigation and that [petitioner] was going to be charged in the next several weeks . . . on a much larger indictment," which included "a much larger conspiracy count."  (Id. at 9–11.)  Agent Costobile also testified that no promises were made to petitioner at the proffer sessions.  (Id. at 12–13.)  While Agent Costobile stated that petitioner's cooperation was not acceptable to the government, he clarified that the reason that petitioner was indicted for a second time was "because the evidence against him was overwhelming, based on the cooperating witnesses and the drug investigation . . . ."  (Id. at 33–34.)

The next witness for the government was Assistant United States Attorney ("AUSA") Patrick Askin who prosecuted petitioner in both the 2000 and the 2001 cases.  (Id. at 37.)  AUSA Askin testified that prior to petitioner's arrest on July 20, 2000, the government had learned about petitioner's involvement in the Coach conspiracy.  (Id. at 41–42.)  On the day of

petitioner's arrest, AUSA Askin informed him of the extensive scope of their investigation and petitioner's likely sentencing exposure in an effort to encourage his cooperation.  (Id. at 45.) While petitioner did cooperate with the government, AUSA Askin decided that petitioner's efforts were insufficient to merit a cooperating plea agreement.  (Id. at 48–49, 61–62.) Thereafter, petitioner agreed to plead guilty to the three substantive counts in the 2000 Indictment—Counts 3, 5, and 7—and AUSA Askin agreed to withdraw the conspiracy charge. (Id. at 49–51, 64–65.)  In doing so, he testified that he told both petitioner and his counsel that petitioner would still be charged in the larger conspiracy.  (Id.)  AUSA Askin also testified that the decision to charge petitioner in the 2001 Indictment was based on the extensive information about petitioner's involvement in the Coach conspiracy.  (Id. at 52–54.)

The third, and final, government witness was Michael Giampietro, Esquire, petitioner's counsel during the proffer sessions in the fall of 2000.  (§ 2255 Hr'g Tr. 7–8, June 1, 2009.) Giampietro testified that during the proffer sessions, the "oncoming indictment" was "an ongoing concern" and that he hoped to somehow combine the two indictments and "arrive at one sentence."  (Id. at 10, 16, 19–20.)  He also testified that he was not aware of any promise by the government to refrain from charging petitioner in the 2001 Indictment in exchange for pleading guilty to the 2000 Indictment.  (Id. at 12–13.)

Following the close of the government's case, petitioner testified on his own behalf. Petitioner confirmed that he was told about the investigation into his role in the Coach conspiracy during the proffer sessions.  (Id. at 37–38, 42–44.)  Petitioner testified that he agreed to cooperate with the government because it was his understanding that if he cooperated, he would not be prosecuted again.  (Id. at 29–30.)  After cooperating for some time, he ceased

13

cooperating because he feared for his life.  According to petitioner, Agent Costobile, AUSA

Askin, and Giampietro became upset with him because he stopped cooperating.  (Id. at 30–32.)

Petitioner also testified that both AUSA Askin and Brian McMonagle, Esquire told him that even

though he had stopped cooperating, he would not be reindicted for his involvement in any

conspiracy to distribute cocaine base if he pled guilty.  (Id. at 39–40, 45–49.)  Petitioner

reiterated that he only agreed to plead guilty to the 2000 Indictment with the understanding that

there would be a "permanent dismissal of the conspiracy count."  (Id. at 32–33, 39, 54–55.)

   This testimony makes clear that while petitioner chose to cease cooperating, this choice

was not the motivating factor in the decision to charge petitioner in the 2001 Indictment.

Petitioner was reindicted because of the evidence that he was extensively involved in the Coach

conspiracy, not because petitioner exercised his legal right.  Moreover, the fact that petitioner

misunderstood the implications of pleading guilty to the 2000 Indictment does not render the

charging decision vindictive.  As the government had legitimate reasons to charge petitioner in

the 2001 Indictment, the reindictment of petitioner for conspiracy does not amount to

prosecutorial vindictiveness.  See Paramo, 998 F.3d at 1221 ("[A] charging decision generally is

not impermissible unless it results solely from the defendant's exercise of a guaranteed legal

right, rather than the prosecutor's ordinary assessment of the societal interest in prosecution.").

As a presumption of vindictiveness does not apply and as petitioner did not demonstrate actual

vindictiveness, petitioner's Argument D is rejected.

   **B.**  **Enforcement of the Plea Agreement**

   In Argument A, petitioner argues that his counsel for the trial on the 2001 Indictment,

Guillermo Bosch, Esquire, was ineffective for failing to raise the issue that the government

agreed in the Plea Agreement in the 2000 case to dismiss the conspiracy charge.  (Mem. in Support of Habeas Pet. 1–2.)  In Argument C, petitioner avers that Bosch was ineffective for failing to argue that the government breached the Plea Agreement in charging petitioner with conspiracy in the 2001 Indictment.  According to petitioner, his counsel likewise should have requested the court to order specific performance of the Plea Agreement.  (Id. at 4–5.)  The merits of Arguments A and C ultimately rest on the same question—the proper interpretation of the Plea Agreement—and this Memorandum will discuss both simultaneously.

In the Plea Agreement, the government agreed, at the time of sentencing, to "[m]ove to dismiss Counts 1, 2, 4, and 6 of the [2000] Indictment," which included the conspiracy charge. (Plea Agreement ¶ 4.)  The Plea Agreement also provided that "[i]t is agreed that no additional promises, agreements or conditions have been entered into other than those set forth in this document . . . ."  (Id. ¶ 11.)  This language did not bar the government from reindicting petitioner for a larger conspiracy, even if the government agreed to dismiss the conspiracy charge in the 2000 Indictment.  Moreover, the language of the Plea Agreement makes clear that the government had not made any promises to petitioner other than those contained within the four corners of the Plea Agreement.

This interpretation of the Plea Agreement is bolstered by Judge Kelly's Memorandum and Order granting petitioner's First § 2255 Motion.  According to petitioner's testimony at the evidentiary hearing, McGonagle advised petitioner that the dismissal of the conspiracy charge pursuant to the Plea Agreement would permanently dispose of all conspiracy charges involving the alleged June/July 2000 drug transactions.  Mem. & Order of Dec. 13, 2005, at 13, No. 00-CR-522-02.  Based on that testimony (McMonagle was not called as a witness), Judge Kelly

15

concluded that McGonagle's advice concerning the Plea Agreement fell "below the range of competence demanded of attorneys in criminal cases." Id.  McGonagle was found to be ineffective because his alleged advice concerning the Plea Agreement was wrong—the Plea Agreement did *not* permanently dismiss any conspiracy count against petitioner involving the alleged June/July 2000 drug transactions. Id. at 15.  In ruling on petitioner's appeal of his conviction in the 2001 case, the Third Circuit concluded that "the government never agreed in the plea agreement . . . to refrain from bringing additional charges against [petitioner] related to his involvement in [the Coach] drug organization." United States v. Waters, Nos. 05-5744, 05-4914, 06-1821, 2007 WL 2783349, at *2 (3d Cir. Sept. 26, 2007) (non-precedential).

Petitioner currently contends that his counsel in the 2001 case, Bosch, was ineffective for failing to argue for an interpretation of the Plea Agreement that this Court, Judge Kelly, and the Third Circuit have concluded is incorrect.  Bosch's failure to advance an argument based on an incorrect interpretation of the Plea Agreement did not render him ineffective.  Accordingly, petitioner's Arguments A and C are rejected.

## C.    Double Jeopardy

In Argument B, petitioner contends that his counsel was ineffective for failing to argue that petitioner's second indictment for conspiracy was barred by the Double Jeopardy Clause. (Mem. in Support of Habeas Pet. 2–3.)  Supreme Court precedent and a decision by the Third Circuit in petitioner's own case demonstrate that this argument cannot succeed.  First, petitioner did not plead guilty to the conspiracy count in the 2000 Indictment, and that count was thereafter dismissed.  In the context of a guilty plea, jeopardy does not attach until the court accepts the guilty plea. United States v. Jerry, 487 F.2d 600, 606 (3d Cir. 1973).  As petitioner did not plead

16

guilty to the conspiracy charge in the 2000 Indictment, jeopardy did not attach with respect to

that charge.  Moreover, it does not violate the Double Jeopardy Clause to prosecute "a defendant

for conspiracy, where certain of the overt acts relied upon by the Government are based upon

substantive offenses for which the defendant has previously been convicted . . . ."  United States

v. Felix, 503 U.S. 378, 380–81 (1992).  As the Third Circuit held in petitioner's appeal of his

conviction in the 2001 case, petitioner "was not previously convicted of a conspiracy count

within respect to the 2000 transactions, only the substantive crime of distribution. . . . [A]

substantive crime and a conspiracy to commit that crime are not the 'same offense' for double

jeopardy purposes . . . ."  United States v. Waters, 138 F. App'x 460, 462 (3d Cir. 2005) (non-

precedential) (citation omitted).  Accordingly, although petitioner pleaded guilty to substantive

offenses that were later included as overt acts supporting his indictment for conspiracy, jeopardy

had not attached with respect to the conspiracy charge.

 As petitioner's double jeopardy argument lacks merit, his counsel was not ineffective for

failing to raise it at petitioner's trial for conspiracy as charged in the 2001 Indictment.

 **D.** **Brady Violation**

 In Argument E, petitioner contends that his counsel was ineffective for failing to argue

that the prosecutor had violated Brady v. Maryland, 373 U.S. 83 (1963).  (Mem. in Support of

Habeas Pet. 8–9.)  Petitioner claims that he "was severely prejudiced by the government's failure

to disclose that it had [i]ndicted him on the same facts as in the first conspiracy case until after he

had been sentenced and it was too late for him to take appropriate procedural action."  (Id. at 9.)

According to petitioner, such evidence was material and exculpatory, and the failure to disclose it

constituted "gross prosecutorial misconduct."  (Id.)

Petitioner's argument is based on an incorrect understanding of the time line in his two cases. The 2001 Indictment was unsealed on September 6, 2001. Petitioner was not sentenced in the 2000 case until October 1, 2001, after the 2001 Indictment was unsealed.

Petitioner argues that the 2001 Indictment was exculpatory evidence with respect to his sentencing in the 2000 case. Petitioner has already successfully challenged his guilty plea in the 2000 case; the judgment and sentence were vacated, and petitioner has not been retried on the charges in the 2000 Indictment. The instant § 2255 Motion challenges his conviction in the 2001 case, and it is not an appropriate vehicle for challenging his vacated conviction and sentence in the 2000 case. The 2001 Indictment, the charging document in the 2001 case, cannot be exculpatory evidence with respect to the 2001 case.

As petitioner does not raise a valid Brady challenge, his counsel cannot be deemed ineffective for failing to make the same argument.

## IV.    CERTIFICATE OF APPEALABILITY

In the Third Circuit, a certificate of appealability is granted only if the petitioner makes: "(1) a credible showing that the district court's procedural ruling was incorrect; and (2) a substantial showing that the underlying habeas petition [or motion] alleges a deprivation of constitutional rights." Morris v. Horn, 187 F.3d 333, 340 (3d Cir. 1999); see also 28 U.S.C. § 2253(c)(2) ("A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right.") The Court concludes that petitioner has not made such a showing. Thus, the Court will not issue a certificate of appealability.

## V.    CONCLUSION

For the foregoing reasons, petitioner's Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255 is denied.

18