### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CRIMINAL ACTION** |
| v. | : | |
| | : | **01-457-2** |
| **KEITH WATERS** | : | |

### MEMORANDUM OPINION

**Goldberg, J.**                                                                                    **October 24, 2024**

Defendant Keith Waters has filed a pro se "Emergency Motion under 18 U.S.C. §

3582(c)(2) and Amendments 706, 750, and 782 of the Fair Sentencing Act and for Appointment

of Counsel" seeking early release from his thirty-year sentence of imprisonment.  The Government

acknowledges that Waters is entitled to sentencing relief under Section 404 of the First Step Act,

I agree, and Waters' motion shall be granted.

### I.       FACTUAL AND PROCEDURAL HISTORY

On August 8, 2001, Waters was charged in an indictment along with several others, with

one count of conspiracy to distribute and possession with intent to distribute more than 50 grams

of cocaine base (crack), that is, more than 250 kilograms of a mixture or substance containing a

detectable amount of cocaine base, within 1000 feet of a school, in violation of 21 U.S.C. §§

841(a)(1) and 860.  Waters was charged with the same offense in the superseding indictment issued

on August 7, 2002.  The charge arose from Waters' participation in a large-scale drug trafficking

organization known as the "Do or Die" or "D.O.D." organization, which operated in North

Philadelphia from January 1992 through May 2001.  According to the superseding indictment,

between June 1998 through April 1999, Waters managed the organization's crack distribution

business on the corner of Warnock and Cambria Streets, obtaining bulk quantities of cocaine and processing it into crack, employing caseworkers, baggers, lookouts, and sellers to package and distribute it.  (Superseding Indictment, ¶ 31).  While most of the defendants pled guilty to the charges against them, Waters and two of his co-defendants proceeded to trial in late February 2003, which resulted in Waters' conviction of the charge against him on March 27, 2003.

In preparation for sentencing, the Probation Office determined Waters' total offense level was 45, and his criminal history category was III.  He was subject to a mandatory minimum sentence of ten years under 21 U.S.C. § 841(b)(1)(A) and a maximum sentence of life imprisonment.  The guideline range called for a sentence of life imprisonment, and on August 22, 2003, Waters was sentenced to a life term.  Waters appealed and, on August 1, 2005, his conviction was affirmed but his sentence was vacated and his case was remanded for resentencing pursuant to United States v. Booker, 543 U.S. 220 (2005).  Waters was subsequently resentenced to a 30-year term of imprisonment.  Waters' appeal of this sentence was unsuccessful and his term of imprisonment was upheld by the Third Circuit.  Although Waters thereafter filed numerous motions seeking  relief from his conviction and sentence pursuant to, *inter alia,* 28 U.S.C. § 2255 and Fed. R. Civ. P. 60(d), his motions were denied and the denials were likewise affirmed by the Third Circuit.

On October 1, 2024, Waters filed an "Emergency" Motion Under § 3582(c)(2) Amendment 706, 750, 782 Fair Sentencing Act § 404, Also Appointment of Counsel."  By this motion, Waters claims he is entitled to early release from his thirty-year sentence pursuant to 18 U.S.C. § 3582(c)(2) and § 404 of the First Step Act of 2018, P.L. 115-391, 132 Stat. 5194 (S. 756).  However, the Third Circuit has held that First Step Act motions fall under 18 U.S.C. § 3582(c)(1)(B) – not § 3582(c)(2) "because the authority for such proceedings stems not from a

sentencing range that has subsequently been lowered by the Sentencing Commission, . . . but rather

from a sentencing range that had been lowered by statute." United States v. Easter, 975 F.3d 318,

323 (3d Cir. 2020).  Accordingly, Waters' motion shall be evaluated under this subsection of §

3582(c).

As a general rule, federal courts "may not modify a term of imprisonment once it has been

imposed." Dillon v. U.S., 560 U.S. 817, 819 (2010)(quoting 18 U.S.C. § 3582(c)).  There are,

however, a few, limited exceptions to this general rule.  One such exception is provided in the

statute upon which Waters bases this motion: 18 U.S.C. § 3582(c)(1)(B), which reads as follows:

> **(c) Modification of an imposed term of imprisonment. –** The
> court may not modify a term of imprisonment once it has been
> imposed except that –
>
> **(1)**  in any case –
>
> . . .
>
> **(B)**  the court may modify an imposed term
> of imprisonment to the extent otherwise
> permitted by statute or by Rule 35 of the
> Federal Rules of Criminal Procedure; . . .

Section 404 of the First Step Act, which took effect on December 21, 2018, makes the

modifications of section 2 or 3 of the Fair Sentencing Act applicable to federal criminal violations

committed before August 3, 2010.  If  the criminal offense at issue meets those parameters, "[a]

court that imposed a sentence for a covered offense may, on motion of the defendant . . . impose a

reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . .  were in effect at

the time the covered offense was committed." Id.

Here, the Government affirms that before the Fair Sentencing Act took effect, under 21

U.S.C. § 841(b)(1)(A), an offense involving 50 grams or more of crack, such as was committed

by Waters, carried a statutory minimum term of imprisonment of ten years and a maximum term

3

of life.  (Gov't's Resp. to Def.'s Pro Se Mot. for Relief Under § 404 of First Step Act, 4).  Section 2 of the Fair Sentencing Act changed the threshold quantity under § 841(b)(1)(A) to 280 grams and increased the threshold quantities in § 841(b)(1)(B) from 5 or more grams of crack to 28 grams. *See* 21 U.S.C. §§ 841(b)(1)(A)(iii), (b)(1)(B)(iii).  Hence, if Waters were to have committed these offenses after 2018 and be sentenced today, instead of a minimum sentence of 10 years to a maximum of life imprisonment, he would be subject to a minimum sentence of 5 years to a maximum of 40 years.  However, because he was also found guilty of distributing crack within 1000 feet of a school in violation of 21 U.S.C. § 860, which requires the applicable sentence to be twice what it would be otherwise, Waters would be facing a potential sentence of 10 to 80 years in prison to be followed by 8, rather than 10, years of supervised release.  Because his sentencing range has obviously been lowered, his motion under § 3582(c)(1)(B) is properly considered.

Before any relief can be granted, however, the sentencing factors outlined in 18 U.S.C. § 3553(a) must be considered to the extent they are applicable, although a plenary resentencing hearing is not required.  United States v. Easter, 975 F.3d at 326.  Relief is not assured, however, as the mere fact that a defendant might be eligible for a sentence reduction under the First Step Act "does not mean he is entitled to it."  United States v. Hynson, No. 22-2134, 2023 U.S. App. LEXIS 17263 at *5 (3d Cir. July 10, 2023) (quoting United States v. Jackson, 964 F.3d 197, 201 (3d Cir. 2020)).  Indeed, § 404(c) clearly states that "nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section."  Rather, district courts are vested with discretion in determining motions for early release and in assessing and weighing the factors set forth in 18 U.S.C. § 3553(a); such decisions are subject to appellate review under the abuse of discretion standard.  United States v. Pawlowski, 967 F.3d 327, 330 (3d Cir. 2020).

In determining whether and how to exercise this discretion, district courts can consider "the record from the original sentencing, including the PSR, the transcript of the sentencing hearing," and any "intervening changes of law or fact." Hynson, 2023 U.S. App. LEXIS at *5 (quoting Concepcion v. United States, 142 S. Ct. 2389, 2404 (2022) and United States v. Shields, 48 F. 4th 183, 193 (3d Cir. 2022)).

As dictated above, the Section 3553(a) factors that must be considered are:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, to afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and to provide the defendant with needed vocational or educational training, medical care or other correctional treatment in the most effective manner;

(3)     the kinds of sentences available;

(4)     the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant…

(5)     any pertinent policy statement issued by the Sentencing Commission … in effect on the date the defendant is sentenced;

(6)     the need to avoid unwarranted sentence disparities between defendants with similar records convicted of similar conduct; and

(7)     the need to provide restitution to any victims of the offense.

18 U.S.C. Section 3553(a)(1) - (7).

The Government advises that following the Sentencing Act amendments and a retroactive amendment to U.S.S.G. § 2D1.1, Waters' guideline range is now 325 to 405 months, and that if sentenced today, he would likely be sentenced to the bottom of the amended range, if not below it. (Gov't's Resp. to Def.'s Pro Se Mot. for § 404 Relief, 7). This is partly because Waters did not provide cocaine or crack cocaine and was not involved in the murder, shootings and other acts of

violence committed by other members of the conspiracy/organization; instead, his role was to supervise one of the drug corners for an eight-month period and supply cutting agents. (Id.). His post-conviction behavior "has been commendable," as he has only committed one minor disciplinary infraction while incarcerated (misuse of a phone in 2000), he has completed numerous courses in the prison system, and has been working in the plumbing shop for the past seven years. (Id.). The Government additionally notes that the Bureau of Prisons has repeatedly rated Waters' risk of recidivism as "low," his current release date is December 2026, and while he was returned to prison in September 2024 from a four-month placement in a residential center, his return was solely attributable to his failure to have completed his GED which was a pre-requisite to residential release. (Id., 7-8). The Government has also confirmed, through the Probation Office, that Waters has an acceptable release plan in place and he would reside with his brother in Philadelphia. It therefore has no objection to the reduction of Waters' term of incarceration to time-served and his period of supervised release being reduced to the mandatory minimum of eight years. (Id., 9).

In considering the § 3553(a) factors, I first find that Waters' offense conduct occurred over a roughly ten-month period more than twenty-five years ago (between June 1998 through April 1999), and his offense was extremely serious given that it involved large quantities of crack cocaine and was part of a very violent drug conspiracy and organization. Today, however, after being incarcerated since July 2000, Waters has availed himself of the educational and vocational opportunities offered in the prison system, and shown himself to be a model prisoner and reliable employee with a low risk of recidivism. Further, the sentence, as modified (30 years) which Waters has been serving since 2003 clearly reflected the seriousness of the offenses of which he was convicted, promoted respect for the law, deterred both Waters' future criminal conduct as well as future criminal conduct by others, protected the public from further crimes by Waters and

enabled him to obtain appropriate correctional treatment, including educational and vocational training.  While he was originally sentenced to life imprisonment, following vacatur of his sentence due to <u>Booker</u> in 2005, Judge Giles, to whom this case was originally assigned, granted a variance from the guideline range of life and resentenced Waters to 30 years' imprisonment.  Waters currently has an anticipated release date in December 2026, and he has now served more than 24 years, or 80% of his original sentence.

 I find the goals and purposes behind Waters' sentence have been met and he no longer poses a danger to the community nor is he likely to re-offend.  If sentenced today, his guideline range would be 325 to 405 months or 27 to 34 years.

As the Government agrees that a sentence at the low end or even below the guidelines would be appropriate for Waters today, he will have served nearly 90% of his sentence already, even without considering the good time credits to which he is undoubtedly entitled.  I therefore find that Waters is entitled to the sentencing relief requested, that a sentence at the bottom of the current guideline range is appropriate and would continue to satisfy the § 3553(a) factors outlined above, and that a sentence of 325 months' imprisonment, to be followed by eight years of supervised release is properly entered.  The Government agrees that this relief is appropriate and that Waters' motion should be granted.

An appropriate Order follows.